DEMETRIO LATONI y GREGORIA RIVERA OLÁN, peticionarios. *v.* TRIBUNAL DE EXPROPIACIONES DE PUERTO RICO, HON. FEDERICO TILÉN, JUEZ, demandado; PUEBLO DE PUERTO RICO, interventor.

Núm. 1817.—*Sometido:* Mayo 9, 1950. *Resuelto:* Mayo 18, 1950.

*Félix Ochoteco, Jr.,* abogado de los peticionarios; *Hon. Procurador General Vicente Géigel Polanco, Carlos J. Faure* y *José Antonio Luiña, Procurador General Auxiliar* este último, abogados del interventor.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La única cuestión a resolver en este recurso es si el Tribunal de Expropiaciones de Puerto Rico, por su juez Federico Tilén, abusó de su discreción al negarse a dejar sin efecto la rebeldía de los demandados anotada por el demandante y a admitir la contestación radicada por los demandados en el caso de *El Pueblo de Puerto Rico* v. *1,207.679 cuerdas de terreno,* entre las cuales está la parcela 5 perteneciente a Demetrio Latoni y su esposa Gregoria Rivera Olán, quienes son los demandados afectados por dicha resolución.

La demanda enmendada en dicho caso fué radicada el 3 de marzo de 1949. No habiéndola contestado los demandados, el demandante solicitó el 22 de junio de 1949 se ano-

tara su rebeldía y así lo hizo el secretario el 23 de junio de 1949. Esto no obstante, el 12 de septiembre de 1949 la corte inferior señaló una conferencia anterior al juicio para el 28 de septiembre y el juicio en su fondo para el 28 de octubre. Empero, al día siguiente, 13 de septiembre de 1949, la corte dictó una resolución que dice así:

"El 23 de junio de 1949 se le anotó la rebeldía a Demetrio Latoni Laparza y a su esposa Gregoria Rivera Olán. Ese mismo día el demandante solicitó el señalamiento del juicio en este caso.

"En la mañana del día de ayer llamamos por teléfono al Lcdo. Félix Ochoteco advirtiéndole de esta situación de hechos, ya que nos estaba peculiar señalar un juicio que envuelve una alta cuantía de dinero sin estar seguros que realmente los demandados no iban a contender. *Dicho letrado nos prometió enviar en seguida una contestación a la demanda a nombre de los referidos demandados. Confiando en esta promesa ayer mismo señalamos una vista para celebrarse una conferencia anterior al juicio y también señalamos otra fecha para la celebración del juicio.*

"Los indicados demandados no han radicado su contestación y el demandante insiste en que se señale el juicio a los mencionados demandados que están en rebeldía. Por ello, dejamos sin efecto nuestra Orden de señalamiento de fecha de ayer y en su lugar por la presente señalamos la vista de este caso para llevarse a cabo el 22 de septiembre a las nueve de la mañana." (Bastardillas nuestras.)

El 14 de septiembre los demandados radicaron una moción solicitando (1) se dejara sin efecto la rebeldía anotada, y (2) se admitiera la radicación de la contestación que acompañaban. El demandante radicó el 16 de septiembre una moción oponiéndose a la apertura de la rebeldía y, celebrada una vista sobre dichas mociones el 19 de septiembre, la corte inferior dictó resolución el 28 de septiembre declarando sin lugar la moción de los demandados. Solicitada su reconsideración, fué denegada el 3 de octubre de 1949. Para revisar esta actuación de la corte inferior expedimos auto de *certiorari* en el presente caso.

■■ La moción de los demandados para que se dejara sin efecto la rebeldía se basó en "la falsa creencia, pero de buena fe del abogado suscribiente que su compañero Luis E. Dubón, con quien tenía constituída una sociedad profesional que giraba bajo el nombre de 'Dubón & Ochoteco', había radicado la contestación de dichos demandados a la Demanda Enmendada y luego de disuelta dicha sociedad".

La resolución de la corte inferior denegando dicha moción se basó principalmente (1) en el hecho de que en la conversación telefónica habida entre el Juez Tilén y el Lic. Ochoteco, abogado de los demandados, éste se refirió más bien a que estaba esperando, para radicar la contestación, el resultado de una posible transacción entre el demandante y la Sucn. Borda, codemandada en la acción, en cuanto al valor de los terrenos expropiados, y (2) en el hecho de que no obstante haber prometido el Lic. Ochoteco al juez en dicha conversación telefónica, enviar "en seguida" la contestación, no lo hizo hasta dos días después.

La prueba testifical que tuvo ante sí la corte inferior para resolver la moción consistió, en cuanto al demandante, en la declaración del Lic. Carlos J. Faure, abogado del demandante, y en cuanto a los demandados, en la declaración del Lic. Félix Ochoteco. Hemos considerado detenidamente dicha prueba y de ella surge un hecho incontrovertible, o sea, una discrepancia absoluta en cuanto a lo que en realidad se dijo en la conversación telefónica habida entre el Juez Tilén y el Lic. Ochoteco el día 12 de septiembre de 1949, a tal extremo, que no habiéndose admitido la declaración del Lic. Faure en cuanto a lo que le había informado el Juez Tilén de dicha conversación telefónica, dicho letrado solicitó que ". . . ahora el Hon. Juez vierta para el récord la conversación habida entre él y el Lic. Ochoteco. . ." a lo que éste se opuso. Insistió el demandante diciendo que no tenía otra alternativa ". . . que usar al Juez como testigo porque es un *issue* relevante".

Nada resolvió la corte, ya que en ese momento prestó declaración el Lic. Ochoteco, quien explicó por qué confió en que su ex socio, Lic. Dubón, había preparado y radicado la contestación, ya que tenía que preparar y radicó otra contestación similar en el mismo caso de expropiación, pero relacionada con terrenos del codemandado Manuel González. También explicó el alcance de la conversación telefónica habida con el Juez Tilén y cómo la interpretó en el sentido de que debía preparar la contestación en seguida pero no en el sentido de tener que enviarla el mismo día, explicando además por qué no pudo radicarla hasta el día 14 de septiembre, o sea, dos días después. No obstante haber sido repreguntado por el Lic. Faure, también el Juez Tilén contrainterrogó extensamente al Lic. Ochoteco y al finalizar hizo constar lo siguiente:

*"Lo que surge aquí es que pasaron, después de esta oportunidad de radicar la contestación con motivo de mi llamada, pasaron dos días de venir el proyecto de contestación; y eso es lo que ha remachado el caso en este particular."* (Bastardillas nuestras.)

Creemos que estas frases de la corte demuestran que si la contestación hubiera sido radicada el mismo día 12 de septiembre, otra hubiera sido la resolución de la corte en este caso, independientemente del motivo que hubiera expuesto el Lic. Ochoteco para la dilación. Las palabras de la corte que acabamos de copiar son una raticación de aquéllas que usó en su resolución de 13 de septiembre, supra, al efecto de que "Dicho letrado nos prometió enviar en seguida una contestación a la demanda a nombre de los referidos demandados. Confiando en esta promesa ayer mismo señalamos una vista para celebrarse una conferencia anterior al juicio y también señalamos otra fecha para la celebración del juicio."

El hecho de que el Lic. Ochoteco se dilatara cuarenta y ocho horas en radicar la contestación quedó explicado satisfactoriamente por él y dicha dilación no es motivo para haberse negado la corte a dejar sin efecto la anotación de rebeldía.

Consideramos, además, que la prueba demostró que en efecto el Lic. Dubón radicó la contestación en el caso del codemandado Manuel González, también tramitado por la firma Dubón & Ochoteco, y que si bien no intervino en el presente caso después del mes de febrero de 1949, el Lic. Ochoteco estuvo justificado en creer que había radicado la contestación de los aquí demandados, ya que con posterioridad a la anotación de la rebeldía de los demandados en junio 23, 1949, el Lic. Ochoteco estuvo interviniendo en otro incidente surgido en el presente caso en relación con un exceso de cabida en la finca expropiada y la cual pertenecía a la Sucn. Borda.   También estamos convencidos de que la apertura de la rebeldía en este caso no ocasionaba ningún perjuicio al demandante debido a que, a la fecha de la resolución recurrida, no se había celebrado el juicio en relación con ninguna de las parcelas de terreno objeto de la expropiación. Por el contrario, celebrar el juicio en el presente caso en rebeldía de los demandados podría ocasionarles perjuicio, ya que tratándose de unos terrenos valorados por el demandante en más de $103,000, los demandados no podrían presentar prueba alguna para demostrar cuál es su justo valor, cuestión ésta que plantearon desde el inicio de la acción en su moción retirando la suma consignada por el demandante en la corte inferior.

Somos de opinión que tanto la Regla 55 (c) como la 60 (b) de las de Enjuiciamiento Civil deben ser interpretadas liberalmente, de manera que los casos sean resueltos en sus méritos y no en rebeldía.   En ese sentido hemos interpretado el artículo 140 del Código de Enjuiciamiento Civil, (1) tomado del artículo 473 del de California, y del cual a su vez, fué tomada la Regla 60 (b).   3 Moore's *Federal Practice* 3270 *et seq.*; *Great Am. Ins. Co.* v. *Corte*, 67 D.P.R. 564, 566.

(1) *Varcárcel* v. *Monge,* 31 D.P.R. 395; *Garriga* v. *Medina,* 42 D.P.R. 775; *Greer* v. *Pérez,* 59 D.P.R. 574.

Aun cuando las cortes de apelación por lo general no intervienen con el ejercicio de la discreción judicial de las cortes inferiores al dejar sin efecto una sentencia dictada en rebeldía, están más inclinadas a hacerlo cuando no se ha dejado sin efecto. *Parks* v. *Coyne*, 137 S.W. 335 (Mo., 1911); y véase monografía en 126 A.L.R. 369. Con más razón estamos justificados en intervenir cuando sólo se trata, como en el presente caso, de una anotación de rebeldía y no de una sentencia y las circunstancias concurrentes demuestran que sólo los demandados habrán de sufrir perjuicios de no permitírseles radicar su contestación, ya que al celebrarse el juicio en rebeldía no podrían presentar prueba en cuanto al valor de la propiedad expropiada. *Rivera* v. *Goytía*, 70 D.P.R. 30, 32, 33. Debe tenerse en cuenta, además, que en estos procedimientos de expropiación forzosa, cuando la única cuestión en controversia es el montante de la cantidad que deba pagarse al dueño, hemos resuelto que aun cuando éste aparezca como demandado, ". . . ocupa en realidad la posición de demandante, y como tal debe probar su derecho a recobrar una cantidad mayor que la consignada por el peticionario como valor de la propiedad y de los daños, si algunos hubiere. Consecuentemente es al dueño a quien incumbre presentar su prueba en primer término. La razón de la regla es que en cuanto a la cantidad que el peticionario ha consignado como valor razonable de la propiedad, no existe controversia, y la única cuestión a resolver es si la compensación debe ser mayor que la consignada." *Pueblo* v. *García*, 66 D.P.R. 504, 506, y casos en él citados.

Erró a nuestro juicio la corte inferior al negarse a dejar sin efecto la rebeldía anotada en este caso y al no admitir la contestación de los demandados y, en su consecuencia, *debe revocarse la resolución dictada el 28 de septiembre de 1949 y devolverse el caso para ulteriores procedimientos.*

El Juez Asociado Sr. Snyder no intervino.